## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JOY JACKSON, as durable power of )
attorney for Londell Jackson, )
                              )
         Plaintiff, )
                              )
v. )   Case No. CIV-23-00319-JD
                              )
TERRACE GARDENS NURSING )
CENTER, LLC doing business as )
Kingwood Skilled Nursing and Therapy; )
AMITY CARE, LLC; and )
BRIDGES ESOP, INC., )
                              )
         Defendants. )

## <u>ORDER</u>

Before the Court are multiple motions regarding discovery disputes between
Plaintiff Joy Jackson ("Jackson") and Defendants Terrace Gardens Nursing Center, LLC
doing business as Kingwood Skilled Nursing and Therapy ("Kingwood"), Amity Care,
LLC ("Amity"), and Bridges ESOP, Inc. ("Bridges") (collectively "Defendants"). First,
Jackson filed a Motion to Compel Discovery [Doc. No. 34], to which Kingwood
responded [Doc. No. 36] and Jackson filed a Notice of Supplemental Authority [Doc. No.
47]. Second, Jackson filed three amended notices of video depositions for Kingwood,
Amity, and Bridges' corporate representatives under Federal Rule of Civil Procedure
30(b)(6). [Doc. Nos. 73, 74, and 75]. In response, each defendant filed a Motion to Quash
and/or Motion for Protective Order. [Doc. Nos. 80, 81, and 82]. Jackson then filed a
Motion for Leave to File Out of Time Suggestions in Opposition to Defendants' motions
[Doc. No. 85], which Defendants oppose [Doc. No. 86]. Third, after Jackson filed an

Amended Disclosure of Expert Witness Barbara Barnette under Federal Rule of Civil

Procedure 26(a)(2) [Doc. No. 83], Defendants filed a Motion to Strike Plaintiff's

Amended Expert Witness Report and Disclosure and Alternative Motion to Extend

Deadline for Daubert Motions [Doc. No. 84]. Jackson filed suggestions in opposition

[Doc. No. 91], and Defendants replied [Doc. No. 92]. Upon consideration of the relevant

briefing and applicable discovery rules, the Court rules on these motions as follows.

## I.    BACKGROUND

This case concerns injuries Londell Jackson allegedly sustained because of the

Defendants' negligence while Mr. Jackson was a resident at Kingwood Skilled Nursing

and Therapy in Oklahoma City, Oklahoma. Mr. Jackson is a quadriplegic. According to

the amended complaint [Doc. No. 11], the nursing facility was infested with mice, and for

the duration of Mr. Jackson's residency at the nursing facility, he "was continuously

bitten by mice; screaming out in pain; and no one from the Facility came to help." Am.

Compl. ¶ 12.

Mr. Jackson's sister, Joy Jackson, brings this suit as durable power of attorney for

Mr. Jackson against Defendants, who Jackson alleges were engaged in a joint venture to

operate the nursing facility. Jackson brings two negligence claims alleging, in part, that

the rodent infestation and Mr. Jackson's subsequent injuries were the result of

Defendants' negligent failure to ensure the nursing facility was adequately staffed,

capitalized, and managed.

According to Defendants, "[t]he issues in this case are whether Kingwood was

negligent in addressing the mice issue and whether Mr. Jackson sustained any injury as a

result of Kingwood's alleged negligence." [Doc. No. 80 at 2; Doc. No. 82 at 2].[1]

Defendants suggest that Mr. Jackson did not sustain injuries from mice while at the

nursing facility. For instance, Defendants assert that "Mr. Jackson had a long history of

delusions" and "a history of dermatitis and edema, both of which can cause skin issues."

[Doc. No. 80 at 2; Doc. No. 82 at 2]. In addition, Defendants note that Mr. Jackson "had

scars from thirteen (13) bullet wounds in four (4) shooting incidents." [Doc. No. 82 at 2;

*see also* Doc. No. 80 at 2].

The parties have contested various discovery issues throughout this case. To

summarize the parties' disagreements, Defendants assert that "[a]lthough the issues in

this case are narrow, Plaintiff served Defendants with discovery requests that are

extremely broad and seek information that is not relevant or proportionate to the needs of

this lawsuit." [Doc. No. 80 at 2; Doc. No. 82 at 2]. Many of Defendants' objections arise

from their position that "this lawsuit involves a mice issue," not nursing standards,

resident care, or staffing. *See, e.g.*, [Doc. No. 80 at 9–10; Doc. No. 82 at 7, 10]. For her

part, Jackson asserts that Defendants have "chosen [a] litigation strategy of obstruction."

[Doc. No. 91 at 19]. Jackson characterizes Defendants' objections to her discovery

requests as "stonewalling," requiring her to file "motion to compel after motion to

compel" to complete discovery within the deadlines set by the Court's scheduling order.

[*Id.*].

---

[1] The Court uses page numbering from the CM/ECF stamp across the top of docket filings.

## II.    <u>LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Further, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed" by the federal or local rules if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The Court may also limit discovery if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). The scope of relevance is broader in discovery than at trial. *See* Fed. R. Civ. P. 26(b)(1) (explaining that discovery need not be admissible at trial to be relevant).

Ultimately, the district court has broad discretion over the control of discovery, and the Tenth Circuit will not set aside discovery rulings absent an abuse of that discretion. *See Martinez v. Schock Transfer & Warehouse Co.*, 789 F.2d 848, 850 (10th Cir. 1986) (recognizing that "[c]ontrol of discovery is entrusted to the sound discretion of the trial courts" and discovery rulings "will not be disturbed absent abuse of discretion"). This standard applies equally to motions to compel and motions to quash. *See, e.g.*, *id.* ("[A] denial of a motion to compel discovery will not be disturbed absent abuse of

discretion."); *Gulley v. Orr*, 905 F.2d 1383, 1386 (10th Cir. 1990) (acknowledging that a "motion to quash a subpoena is left to the sound discretion of the trial court"). "A trial court abuses its discretion when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *United States v. Nickl*, 427 F.3d 1286, 1300 (10th Cir. 2005) (cleaned up).

## III.    <u>ANALYSIS</u>

### A. **Jackson's Motion to Compel**

Jackson's Motion to Compel Discovery originally sought to compel responses to twelve requests for production. *See* [Doc. No. 34 at 18–30]. However, after "further meet and confer efforts," the parties "narrowed the discovery dispute to a single issue": Request for Production No. 21 ("RFP 21"). [Doc. No. 37]. RFP 21 seeks "Facility Emails – each email sent or received by [Kingwood's] Administrator or Director of Nursing containing any of the following search terms between January 1, 2022, through June 8, 2022[:] 'Budget;' 'Census;' 'PPD' and 'per patient day'; 'HPPD' and 'hours'; 'labor'; 'agency'; 'short'; 'mouse'; 'rodent' 'mice;' and 'agency.'" [Doc. No. 34 at 24; Doc. No. 34-1 at 4]. Kingwood objects to RFP 21, asserting that "the only potential relevance of many of these terms is to Plaintiff's understaffing claim," which Kingwood argues is irrelevant to this action. [Doc. No. 36 at 8]. Further, according to Kingwood, the request is burdensome, disproportionate to the needs of the case, "too broad and vague," and would possibly yield privileged communications. *Id.* at 8–11.

Once a party seeking discovery moves the court to compel the opposing party to respond to a request for production, the opposing party "seeking to avoid discovery bears the burden of showing why that discovery should not be permitted." *Pruess v. Presbyterian Health Plan, Inc.*, 579 F. Supp. 3d 1235, 1240 (D.N.M. 2022); *see also* 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2214 (3d ed. 1998) (June 2024 update) (explaining that when a court must "determine whether, though the items sought are properly discoverable under the rule, the party from whom discovery is sought has shown some sufficient reason why it should not be allowed. . . . the burden is on the objector to satisfy the court that discovery should not be had"). "The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable" despite the broad scope of discovery under Rule 26. *Pruess*, 579 F. Supp. 3d at 1240. The objecting party "may not rely on boilerplate, generalized, conclusory, or speculative arguments" because "[a]rguments against discovery must be supported by 'specific examples and articulated reasoning.'" *Id.* (citation omitted).

Kingwood asserts that RFP 21 is irrelevant because it relates only to Jackson's allegation that the facility was understaffed, which "is not at issue in this case" because "the issue is whether Kingwood negligently failed to address the mice issue, which was being treated by an expert exterminator, and whether Mr. Jackson was injured as a result of Kingwood's alleged negligence." [Doc. No. 36 at 5]. The Court disagrees. Under the broad scope of relevance for discovery purposes, the issue of whether the facility was

adequately staffed relates to Jackson's allegations that Defendants breached their duty to provide proper care to Mr. Jackson. *See* [Doc. No. 11 ¶¶ 128–31, 134].

      To support its argument that RFP 21 is overly burdensome and disproportionate to the needs of the case, Kingwood asserts that complying with this request would "require[] time-consuming electronic computer searches before Plaintiff has even attempted to develop evidence supporting an understaffing claim." [Doc. No. 36 at 8–9]. However, Kingwood does not provide specific examples or facts reflecting the time or expense responding to this request would require. *Cf. Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) (explaining that "[t]o voice a successful objection" to discovery, it is not enough to "intone [the] familiar litany" that a request is "overly broad, burdensome, oppressive and irrelevant"). Further, Rule 26 makes clear that "methods of discovery may be used in any sequence" unless the parties have stipulated or the court orders otherwise. Fed. R. Civ. P. 26(d)(3)(A). Jackson is not required to resort to other tools of discovery before requesting the production of emails in order to develop evidence supporting her understaffing claim.

      Next, Kingwood argues that "several of the search terms are too broad and vague" because terms such as "budget, hours, labor, agency, and short . . . could come up in a variety of contexts having nothing to do with staffing issues." [Doc. No. 36 at 9]. The Court concludes that while the issue of staffing is relevant to this action, RFP 21 as currently drafted is disproportionate to the needs of the case because it would likely produce a significant number of emails that are unrelated to Jackson's claim. The terms "hours," "labor," and "agency" should be excluded from RFP 21. With these terms

omitted, RFP 21 is appropriately tailored and proportionate to the needs of the case, especially considering that it requests emails only from certain custodians within an appropriate time frame.

Kingwood objects that RFP 21 could produce documents that are protected by various privileges, including the "peer review and quality assurance doctrines," "the doctrine of critical self-analysis," "confidential attorney-client communications and work product," and "the physician-patient privilege and HIPAA." [Doc. No. 36 at 9–10]. Jackson asserts that Kingwood has waived its privilege objections because it has not produced a privilege log. [Doc. No. 34 at 16].

Rule 26 requires a party withholding otherwise discoverable information by asserting a privilege to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed," typically in a privilege log. Fed. R. Civ. P. 26(b)(5)(A)(i)–(ii). The federal rules do not state that a failure to produce a privilege log results in a waiver of the privilege, but the advisory committee contemplated that result and many courts have imposed it. *See White v. Graceland Coll. Ctr. for Pro. Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008) (citing Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment). "Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty" only for certain circumstances, and "[m]inor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver." *Id.* For example, courts have concluded that a "document-by-document privilege log is not always necessary when a party has, in good faith,

asserted other non-privilege objections to the discoverability of a whole range of materials." *Driscoll v. Castellanos*, No. CV 19-527 JCH/KK, 2020 WL 7711869, at *6 (D.N.M. Dec. 29, 2020) (citation omitted). Kingwood raised other good-faith objections to RFP 21 aside from privilege, including proportionality and relevance objections. Therefore, the Court finds that Kingwood did not waive its privilege arguments by not submitting a privilege log.

In sum, the Court GRANTS IN PART Jackson's Motion to Compel Discovery [Doc. No. 34], but the Court limits the scope of RFP 21 by omitting the terms "hours," "labor," and "agency."[2] Kingwood's counsel is ordered to respond to RFP 21 as limited and to provide a privilege log describing any withheld emails.

### B.  Jackson's Motion for Leave to File Out of Time

Before the Court addresses Defendants' Motions to Quash and/or Motions for Protective Orders [Doc. Nos. 80, 81, and 82], it must determine whether to grant Jackson leave to file out of time suggestions in opposition to these motions. Defendants filed these motions on July 29, 2024, making Jackson's deadline to respond August 19, 2024. *See* LCvR7.1(g). Jackson did not file a response by this date. Instead, on August 23, 2024, Jackson filed a Motion for Leave to File Out of Time Suggestions in Opposition to

---

[2] Under Rule 37(a)(5), if a motion to compel "is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." The Court finds that an award of expenses is not called for here. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 383 (D.N.M. 2018) ("Where parties have taken legitimate positions, and the Court grants in part and denies in part a motion to compel discovery responses, courts generally conclude that justice requires that each party be responsible for their own fees and costs.").

Defendants' motions. [Doc. No. 85]. Jackson attached to her motion suggestions in opposition that withdrew some of the contested topics, responded to Defendants' objections to some topics, and left other objected-to topics unaddressed. *See* [Doc. Nos. 85-1 and 85-2]. Jackson's motion requests that the Court grant her leave to file these suggestions out of time because the delayed filing was the result of her counsel's excusable neglect. [Doc. No. 85 at 8]. In the alternative, Jackson asks the Court to *sua sponte* modify Local Civil Rule 7.1 and retroactively change the deadline for Jackson's response to August 23, 2024. [*Id.*].

According to the motion, Jackson's counsel did not timely file a response because her "counsel recently implemented a new case management system and mistakenly entered the due date on the electronic calendar as August 26, 2024." [*Id.* at 3]. Defendants oppose the request, arguing that docketing errors generally do not constitute excusable neglect. [Doc. No. 86 at 2–3]. Defendants request that the Court deny Jackson's motion and deem confessed Defendants' Motions to Quash and/or Motions for Protective Orders. [*Id.* at 8].

When the time for doing an act has already expired, extension requests are generally analyzed under Federal Rule of Civil Procedure 6(b)(1)(B), which provides that the Court can extend a deadline for "good cause" if the movant shows "excusable neglect." The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These circumstances include "[1] the danger of prejudice to the [non-moving party], [2] the

10

length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (alterations in original) (quoting *Pioneer*, 507 U.S. at 395). Of the four *Pioneer* factors, the third is the "most important," as "an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Id.*

Considering this standard, Jackson has not established excusable neglect for her failure to file her responses timely. Three of the *Pioneer* factors—the length of delay and impact on the proceedings, prejudice to the non-moving party, and the movant's good faith—weigh in favor of finding excusable neglect. Jackson requested an extension four days after the deadline, and she included her responses with her Motion. Because there would be no further delay beyond these four days, the impact on the proceedings is relatively minor. There is no apparent danger of prejudice to Defendants if the Court grants the extension, nor is there any indication that Jackson or her counsel acted in bad faith.

Nevertheless, the Court finds Jackson's explanation for the delay—"[t]he most important factor"—insufficient to show excusable neglect. *Perez*, 847 F.3d at 1253. Jackson explains that her counsel's error in calendaring the due date in a new case management system caused the late filing. As the Motion admits, this error "was entirely Plaintiff's counsel's fault." [Doc. No. 85 at 7–8]. Significant Tenth Circuit authority indicates that a calendaring error does not constitute excusable neglect. For instance, in *Perez*, the Tenth Circuit affirmed a district court's denial of a motion to file an out-of-

11

time answer when the only *Pioneer* factor weighing against the late-filing party was the reason for its delay: "a failure to calendar the answer's due date." 847 F.3d at 1253; *accord Magraff v. Lowes HIW, Inc.*, 217 F. App'x 759, 761–62 (10th Cir. 2007) (unpublished) ("[W]e do not find an abuse of discretion in the district court's conclusion that the calendaring error caused the delay and did not constitute excusable neglect or good cause to justify an extension to file the notice of appeal."). The fact that counsel recently implemented a new case management system does not bolster his explanation. *Cf. Pioneer*, 507 U.S. at 398 ("[W]e give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."). Under these circumstances, the Court concludes that counsel's error in calendaring the deadline to respond is not excusable neglect.

However, Jackson's response brief deadline is set by the Local Rules, which state that "[t]he trial judge has discretion in any civil or criminal case to waive any requirement of these local rules when the administration of justice requires." LCvR1.2(c); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962) (recognizing the "'inherent power' . . . necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Given that Jackson's suggestions in opposition would withdraw a number of objected-to topics and streamline the issues before the Court, the Court finds that, in this particular circumstance, it furthers the administration of justice to extend Jackson's response deadline and consider her suggestions in opposition.

The Court therefore *sua sponte* MODIFIES Jackson's response deadline to August 23, 2024, and considers the responses attached to Jackson's motion to file out of time as timely filed. Since the parties' briefs have sufficiently apprised the Court of their arguments, the administration of justice does not require the Court to grant Defendants an opportunity to file reply briefs, which are "optional and not encouraged" under the local rules. *See* LCvR7.1(h).

### C. Defendants' Motions to Quash and/or Motions for Protective Orders

Next, the Court turns to each Defendant's Motion to Quash and/or Motion for Protective Order Regarding Plaintiff's Amended Notice for Corporate Representative Deposition. [Doc. Nos. 80, 81, and 82]. Jackson filed virtually identical notices of the forty topics she intended to raise in the depositions of Amity and Bridges' corporate representatives [Doc. Nos. 73 and 74], and she filed a similar notice to depose Kingwood's corporate representative regarding sixty topics [Doc. No. 75]. Defendants object on several grounds, including that these requests are not relevant, overly broad, disproportionate to the needs of the case, and are not set forth with reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6). *See generally* [Doc. Nos. 80, 81, and 82]. In response, Jackson has withdrawn a number of these topics, contested several of Defendants' objections, and left other objected-to topics unaddressed. *See* [Doc. Nos. 85-1 and 85-2].

Federal Rule of Civil Procedure 30(b)(6) sets out the standard for deposing a corporation. It provides that in a deposition notice,

a party may name as the deponent a public or private corporation, a
partnership, an association, . . . or other entity and must describe with
reasonable particularity the matters for examination. The named
organization must designate one or more officers, directors, or managing
agents, or designate other persons who consent to testify on its behalf; and
it may set out the matters on which each person designated will testify.
Before or promptly after the notice or subpoena is served, the serving party
and the organization must confer in good faith about the matters for
examination. . . . The persons designated must testify about information
known or reasonably available to the organization. This paragraph (6) does
not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6). The rule exists "because '[o]bviously it is not literally possible to

take the deposition of a corporation; instead . . . the information sought must be obtained

from natural persons who can speak for the corporation.'" *Cook v. Lynn & William, Inc.*,

344 F.R.D. 149, 153 (D. Mass. 2023) (alterations in original) (quoting 8A Charles Alan

Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2103 (3d

ed. 1998) (April 2023 update)). "In a Rule 30(b)(6) deposition, there is no distinction

between the corporate representative and the corporation. . . . The designee testifies on

behalf of the corporation and thus holds it accountable." *Sprint Commc'ns. Co., L.P. v.

Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) (footnotes and citations

omitted). Accordingly, "companies 'have a duty to make a conscientious, good-faith

effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare

them to fully and unevasively answer questions about the designated subject matter.'" *Id.*

(footnote and citation omitted). "A Rule 30(b)(6) witness is obligated to become educated

to the extent possible about the identified topics, although perfection is not expected."

*Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019).

Given this burden imposed on a responding entity, Rule 30(b)(6) imposes a reciprocal burden on the party seeking discovery to describe the information sought with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). The federal rules do not define "reasonable particularity." Some courts have construed Rule 30(b)(6) to require a requesting party "to designate, with painstaking specificity, the particular subject areas that are intended to be questioned." *Sprint*, 236 F.R.D. at 528. At a minimum, "topics must be stated with enough specificity to allow the corporation to designate and prepare a representative to testify." *Edwards*, 331 F.R.D. at 121. Otherwise, "[a]n overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" of preparing a corporate representative even though it "cannot identify the outer limits of the areas of inquiry noticed." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

In addition to the "reasonable particularity" requirement, "[l]ike other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative." *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (citation omitted). The typical burdens that apply when objecting to a discovery request apply when a party objects to a Rule 30(b)(6) notice. "Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery (1) does not fall within the scope of relevant evidence, or (2) is of such marginal relevance that the potential harm of discovery is outweighed by the benefit." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 275 (D. Colo. 2022). "But when the relevance of a discovery request or device is not

apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial showing of relevance." *Id.*

With these standards in mind, the Court considers each Defendant's motion in turn.

### 1. Amity's Motion to Quash and/or Motion for Protective Order

Amity's motion requests that the Court quash and/or enter a protective order regarding thirty-eight of the forty topics in Jackson's notice. [Doc. No. 80]. The two unobjected-to topics seek information regarding the "pest infestation" and the response to it at the nursing center during the relevant time period. [Doc. No. 73 ¶¶ 5–6]. Amity argues that every other topic in the notice is improper because, among other defects, they are overly broad, not reasonably particular, irrelevant, or disproportionate to the needs of the case. [Doc. No. 80 at 6–15].

#### a. *Topics 1 through 4, 7 through 9, 11, 19 through 21, 24, 39, and 40.*

Jackson's response to Amity's objections to each of these topics states: "Plaintiff is withdrawing this topic, thus making the issue moot." [Doc. No. 85-2 at 7, 8, 10, 13].[3] Therefore, these topics are withdrawn, and the Court will not consider them or Amity's objections to them.

---

[3] Jackson's response does not address Topic 11, but Amity's motion states that the parties conferred, and Jackson agreed to withdraw the topic. [Doc. No. 80 at 1]; *see* Fed. R. Civ. P. 11(b)(3) (discussing attorneys' obligations to certify the accuracy of every factual contention presented in any motion to the court). Thus, the Court considers Jackson to have also withdrawn this topic even though she did not state as much in her response.

*b.  Topics 10, 18, 22, 23, and 33 through 38.*

Each of these topics asks Amity to identify certain individuals. Topic 10 requests "[t]he identity of each director of operations and/or Regional Director assigned to the Facility during the Requested Time Period and those person's job responsibilities during that period." [Doc. No. 73 ¶ 10]. The remaining topics request the identities of those involved in crafting various policies and practices in effect while Mr. Jackson was a resident at the nursing facility. These policies and practices relate to the following: "nursing standards" [*id.* ¶ 18], "personnel matters, human resource issues, employee standards or disciplinary procedures" [*id.* ¶ 22], "staffing of individuals related to resident care" [*id.* ¶ 23], "in-service training" [*id.* ¶ 33], "the staffing budget" [*id.* ¶ 34], "the nursing budget" [*id.* ¶ 35], "the staffing matrix or grid" [*id.* ¶ 36], "the nursing [hours per patient day, or] HPPD" [*id.* ¶ 37], and the approval or denial of requests to place "order[s] for supplies or other tangible resources" [*id.* ¶ 38].

Amity raises particularized objections to several of these topics, as well as one overarching objection: "corporate representative depositions are intended to serve as a 'wrap-up' for missing discovery, not as a primary source of discovery." [Doc. No. 80 at 8]. Thus, because these topics only "seek names," Amity argues that a less burdensome discovery tool, such as an interrogatory, would be more appropriate. [*Id.* at 9]. In response, Jackson argues that "Defendants do not get to decide what method of discovery is utilized to pursue [Jackson's] claims," as "parties may choose the manner and method in which they conduct discovery." [Doc. No. 85-2 at 5] (quoting *Mayhew v. Angmar Med. Holdings, Inc.*, No. 18-2365-JWL-KGG, 2019 WL 5556135, at *4 (D. Kan. Oct. 28,

2019)). Further, Jackson asserts that parties are free to request the same information by both deposition and interrogatory, and oral depositions "should not be routinely replaced by written questions." [*Id.* at 6] (quoting *Armstrong v. MGC Mortg., Inc.*, No. 1:09-CV-00131, 2010 WL 3835703, at *3 (N.D.W. Va. Sept. 28, 2010)).

Given the particular circumstances of this action, the Court agrees that the information Jackson seeks could "be obtained from some other source that is more convenient, less burdensome, or less expensive" than a corporate representative deposition. Fed. R. Civ. P. 26(b)(2)(C)(i). Thus, under the federal rules, the Court "*must* limit the frequency or extent*" of such discovery. *Id.* (emphasis added). Although Jackson is correct that parties generally enjoy significant discretion as to the methods of discovery they employ, *see* Fed. R. Civ. P. 26(d)(3)(A), parties must remain mindful of the burdens and expenses their chosen discovery methods will impose, Fed. R. Civ. P. 26(b)(2)(C)(i). It is disproportionately burdensome and expensive to prepare a corporate representative for a Rule 30(b)(6) deposition merely for that representative to provide individuals' names. These burdens are especially weighty considering the seemingly marginal importance of the information sought and Jackson's ability to identify these individuals through other means, such as interrogatories. *See U.S. ex rel. Smith v. Boeing Co.*, No. 05-1073-WEB, 2009 WL 2777278, at *6 (D. Kan. Aug. 27, 2009) ("The names and last known addresses of potential witnesses can be obtained more conveniently and with less expense through a simple interrogatory. Requiring [a defendant] to designate a corporate representative to appear for a deposition to provide the names and addresses of witnesses

is a waste of time and money."). Accordingly, the Court grants Amity's motion as to these topics.

    *c.* *Topic 12: Identification and description of the relationship between this Defendant and the other remaining Defendants during the Time Period of Resident's Stay.*

Amity's only objection to this topic is that it "is extremely vague and is not reasonably particular." [Doc. No. 80 at 12]. Jackson did not respond to this objection. Given Jackson's allegations that Amity, Bridges, and Kingwood were engaged in a joint venture and therefore "owed a joint duty to Resident to use reasonable care for [his] safety while under their care and supervision," Am. Compl. ¶ 50, this topic appears relevant on its face. Amity has not shown that this topic is not relevant or that its potential harm outweighs its benefit. Because the Court finds that this topic is relevant to this action and reasonably particular enough to satisfy Rule 30(b)(6), the Court denies Amity's motion as to this topic.

    *d.* *Topic 13: Identification of the types of communications this Defendant conducts with Medicaid and Medicare regarding reimbursement, direct payment from Medicare and/or Medicaid on behalf of residents of the Facility during the Time Period of Resident's Stay. This should include a description of what information is transmitted between this Defendant and either Medicaid or Medicare, the methods of transmitting such information, description of the job titles or positions which are responsible for such communication and identification of the person responsible for such communications when Resident was a resident at the Facility.*

Amity objects that "[t]his topic is vague, not reasonably particular, overly broad, and seeks irrelevant testimony." [Doc. No. 80 at 12]. Jackson did not respond to this objection. The relevance of this topic is not apparent from its face. The amended complaint's only mention of Medicare or Medicaid is: "Medicare has commissioned and

made available to all nursing home studies and data showing the number of minutes of nursing and nursing aide care a person at a specific RUG level should be expected to require, which Medicare calls 'expected staffing.'" Am. Compl. ¶ 67. If Topic 13 is meant to seek information regarding expected staffing, it is not reasonably tailored to do so. Because this topic does not appear relevant to this action, the Court grants Amity's motion as to this request.

> e. *Topic 14: Identification of the organizational structure of this Defendant, including identification of the job positions and titles within this Defendant who has any interaction with the Facility, responsibilities for each position and identification of the individuals performing such duties while Resident was a resident at Facility.*

Amity argues that this topic is "extremely broad and seek[s] testimony that has no relevance to the issues in this lawsuit," as "Plaintiff cannot legitimately argue she needs information regarding every person at Amity who interacts with Kingwood in any way." [Doc. No. 80 at 12–13]. Jackson did not respond to this objection.

This topic appears relevant on its face because it relates to Amity and its employees' duties and responsibilities with regard to the nursing facility while Mr. Jackson resided there. But the Court agrees with Amity that this request is overly broad and disproportionate to the needs of the case. The information sought is so marginally relevant that the burden Amity would bear in preparing a corporate representative to address this topic outweighs any benefit to Jackson. The Court therefore grants Amity's motion as to this topic.

> f. *Topic 15: For each position identified in the paragraph above, a description of the nature and extent of communications or involvement that such position has directly with Facility while Resident was a resident at Facility. This should*

*include description of any time spent in the Facility itself or communications*
*with individuals at the Facility for any reason, the purpose of such*
*communications and the frequency of such.*

Amity objects to Topic 15 for the same reasons it objects to Topic 14. [*Id.*]. Again, Jackson did not respond to this objection. Because the Court agrees that this request is overly broad and disproportionate to the needs of the case, it grants Amity's motion as to Topic 15 for the same reasons it grants Amity's request as to Topic 14.

g. *Topic 16: Description of the nature of this Defendant's involvement in*
   *recording, collecting, maintaining or otherwise monitoring employee time*
   *records for Facility while Resident was a resident at Facility.*

Amity argues that this topic is not reasonably particular and is irrelevant to this lawsuit, as it has "nothing to do with Plaintiff's claims that Mr. Jackson was bitten by mice." [*Id.* at 13]. Jackson did not respond.

The Court disagrees with Amity's assertion that this topic is irrelevant. Jackson has alleged that Defendants breached duties of care they owed Mr. Jackson, in part because the nursing facility "did not have an adequate number of staff working daily at the Facility to meet Resident's needs [or] perform the interventions required to prevent rodent infestation and rodent attacks on" Mr. Jackson. Am. Compl. ¶ 65. Employee time records and Amity's role in monitoring them are relevant to this allegation. Because this topic is relevant on its face, Amity bears the burden of showing that it should not be permitted. Amity has not met this burden. This topic is relevant, set forth with reasonable particularity, and would not impose an undue burden on Amity. The Court denies Amity's motion as to this request.

h.  *Topic 17: Identification and description of the nature of this Defendant's involvement in the payroll processes for Facility while Resident was a resident at Facility.*

Amity offers the same reasoning in its objection to this topic as it provides in its objection to Topic 16. [Doc. No. 80 at 13]. Jackson did not respond. Whereas employee time records are relevant to this case, it is not apparent from the face of Topic 17 how Amity's involvement in the payroll process is at all relevant to this action. Jackson has not made any showing as to the relevance of this topic. Accordingly, the Court grants Amity's motion as to this request.

i.  *Topic 25: The nature of this Defendant's management and/or administrative support services provided to Facility during Time Period of Resident's Stay was a resident.*[4]

Amity objects to this topic because it "has produced its management agreement with Kingwood, which is all of the information Plaintiff could reasonably need." [*Id.*]. "If Plaintiff has some unanswered questions not addressed by the management agreement, she should draft a reasonably particular topic." [*Id.*]. Jackson did not respond to this objection.

This topic appears relevant on its face as it relates to Amity's role in managing the nursing facility while Mr. Jackson was a resident. However, the Court agrees with Amity that this topic is not drafted with sufficient particularity to apprise Amity of what precise issues Jackson seeks to address that are not covered by the already-provided management agreement. The benefit Jackson would attain by seeking any additional information on

---

[4] The Court states the topics as they appear, even though some of them have typographical errors.

22

this topic is outweighed by the burden on Amity in preparing to respond to this overly broad notice. The Court grants Amity's motion as to this request.

      j.   *Topic 26: Identification and description of reports, records, and surveys that are prepared and maintained by this Defendant which are forwarded to and/or from Facility.*

Amity argues that "[t]his topic is extremely vague and overly broad, and arguably encompasses virtually every document sent between Amity and Kingwood. Plaintiff makes no effort to limit the scope of this topic to any relevant topic or to proportionate discovery." [*Id.*]. Jackson did not respond. The Court agrees with Amity: this topic is overly broad, and there is no meaningful limit on the scope of the information sought that would make this topic proportional to the needs of this case. Amity's motion is granted as to this request.

      k.   *Topic 27: Describe how this Defendant is compensated for the management or administrative support services this Defendant provides to Facility and identify the individual within this Defendant's most familiar with how it is calculated and administered during the Requested Time Period.*

Amity objects to this topic because "Amity's compensation is irrelevant to any issue in this lawsuit" and "[r]equiring Amity to provide testimony regarding its confidential financial matters is not proportionate to the needs of this lawsuit." [*Id.* at 14]. Jackson did not respond to this objection. It is not apparent from the face of this request how Amity's compensation is relevant to this case. Jackson has not demonstrated how this topic is relevant, so the Court grants Amity's motion as to this request.

l.   *Topic 28: Describe the financial management services provided by this Defendant for Facility during the Requested Time Period.*

Amity lodges the same objection to this topic as it did to Topic 25: "Amity has produced its management agreement with Kingwood, which is all of the information Plaintiff could reasonably need." [*Id.* at 13]. "If Plaintiff has some unanswered questions not addressed by the management agreement, she should draft a reasonably particular topic." [*Id.*]. Again, Jackson did not respond.

As with Topic 25, this topic appears relevant on its face; the financial management services Amity provides for the facility are relevant to Jackson's allegations that the nursing facility's undercapitalization "left the Facility with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their facility during Resident's time there." Am. Compl. ¶ 88. However, the Court agrees with Amity that this topic is overly broad and, given that Amity has already produced its management agreement, needlessly cumulative. The Court grants Amity's motion as to this topic.

m.   *Topic 29: With regard to the fee paid by Facility to this Defendant, identify any documents reflecting method of calculation of such fee, or identification of those individuals responsible for determination that calculation during the Requested Time Period.*

Amity's objection to this topic is the same as its objection to Topic 27: "Amity's compensation is irrelevant to any issue in this lawsuit" and "[r]equiring Amity to provide testimony regarding its confidential financial matters is not proportionate to the needs of this lawsuit." [Doc. No. 80 at 14]. Jackson did not respond. Again, it is not apparent from the face of this request how Amity's compensation is relevant to this lawsuit. Because

24

Jackson has not demonstrated the relevance of this topic, Amity's motion is granted as to this request.

    n.   *Topic 30: Identify and describe the process by which information is collected and recorded for purposes of preparation of any Patient Census maintained by this Defendant during the Requested Time Period.*

Amity asserts that "[t]his information could only be relevant to Plaintiff's unsupported understaffing claim. Moreover, Defendants have produced staffing records and census reports during Mr. Jackson's residency, which is the only information Plaintiff arguably needs." [*Id.*]. Jackson did not respond to this objection.

    The relevance of this topic is apparent on its face, as, according to the amended complaint, the patient census reflects the staffing needs of the nursing facility and may demonstrate whether the facility was understaffed. *See* Am. Compl. ¶¶ 75–83. However, while the patient census itself is relevant, the process by which Amity might prepare the census appears only marginally relevant. Especially considering Amity's assertion that it has already produced staffing records and census reports from the time of Mr. Jackson's residency, this topic appears cumulative, duplicative, overly burdensome, and not proportionate to the needs of the case. Therefore, the Court grants Amity's motion as to this topic.

    o.   *Topic 31: To the extent that this Defendant is involved, identification description of any method by which an Administrator, Director of Nursing, Assistant Director of Nursing or Regional Director assigned to the Facility is recruited, interviewed, vetted (background check performed) or hired/employed by Facility during the Requested Time Period. This should include identification of those individuals involved in any process to recruit, interview, perform background checks or hire any such individuals.*

According to Amity, "[t]his topic is not reasonably particular, relevant to the issues in this lawsuit, or proportionate to the needs of the case," as Jackson "has not asserted any independent negligence claims against the Defendants for negligent hiring or retention." [Doc. No. 80 at 14]. Jackson did not respond to this objection.

The relevance of this topic is apparent on its face. Jackson has alleged that Amity and Bridges "managed, maintained, and/or controlled the Facility by providing nursing consulting services and exercising control over . . . [t]he hiring and firing of the administrator," which "had a direct impact on the care provided to" Mr. Jackson. Am. Compl. ¶¶ 36–37, 43–44. These allegations are relevant to Jackson's negligence claim; she need not bring separate claims for negligent hiring or retention for such information to be relevant. This notice is reasonably particular enough to allow Amity to designate and prepare a corporate representative to address it, and doing so would not be unduly burdensome. Accordingly, Amity's motion is denied as to this request.

p. *Topic 32: To the extent that this Defendant is involved in such circumstance, identification and detailed description of the process by which in-service training is provided to or conducted for health care providers in Facility during the Requested Time Period. This should include identification of those individuals, by name, job title and employer, involved in providing such in-service training or education, how subject matter or topics are determined for such training and description of any materials commonly prepared or records that are maintained in developing, providing/presenting, recording or reviewing such training at or on behalf of Facility.*

Amity argues that "this topic contains no limitations on its scope to make it relevant and reasonably particular to some issue in this case." [Doc. No. 80 at 15]. "There is also no evidence that any alleged lack of training had any bearing on Mr. Jackson's care." [*Id.*]. Jackson did not respond.

26

Like Topic 31, this topic is relevant to Jackson's negligence claim because she has alleged that Amity "managed, maintained, and/or controlled the Facility by providing nursing consulting services and exercising control over . . . [t]raining and supervising nursing staff persons," which "had a direct impact on the care provided to" Mr. Jackson. Am. Compl. ¶¶ 36–37, 43–44. This topic is sufficiently particular, and the information sought is not disproportionate to the needs of the case. This topic asks Amity to identify certain individuals, but that is not the only piece of information sought in this topic. Instead, the topic goes beyond mere identification and requests descriptions of particular aspects of the training process. Amity's motion is therefore denied as to this request.

\* \* \*

To summarize, the Court GRANTS Amity's Motion to Quash and/or Motion for Protective Order [Doc. No. 80] as to Topics 10, 13 through 15, 17, 18, 22, 23, 25 through 30, and 33 through 38. The Court DENIES Amity's motion as to Topics 12, 16, 31, and 32. Together with those topics to which Amity did not object and those that Jackson withdrew, the remaining topics for Jackson's Rule 30(b)(6) deposition of Amity's corporate representative are Topics 5, 6, 12, 16, 31, and 32.

### 2. *Bridges' Motion to Quash and/or Motion for Protective Order*

The Court next addresses Bridges' Motion to Quash and/or Motion for Protective Order Regarding Plaintiff's Amended Notice for Corporate Representative Deposition. [Doc. No. 81]. The motion states: "Because Plaintiff's Amended Notices to Amity and Bridges are virtually identical, and to avoid burdening the Court with re-reading the same arguments, Bridges hereby adopts and incorporates Amity's Motion as is set forth fully

herein." [*Id.* at 2] (citing [Doc. No. 80]). "In addition," the motion states, "Bridges is a parent company to Amity and Kingwood. It does not have any employees. Therefore, any testimony it could provide would rely on information provided by Kingwood and/or Amity representatives and would be cumulative and unnecessary." [*Id.* at 2–3]. Jackson's response does not address Bridges' arguments separately; rather, Jackson simply references both Amity and Bridges in her responses to Amity's objections. *See generally* [Doc. No. 85-2].

Given that Bridges incorporates Amity's arguments as its own, the Court's ruling on Bridges' motion is the same as its ruling on Amity's motion. There are no salient differences, as far as the Court can discern from the parties' filings, between these defendants for purposes of the present motions.

As for Bridges' argument that it would have to rely on information provided by the other defendants because it does not have employees, the Court is unpersuaded. Rule 30(b)(6) requires a corporation to designate a representative who "must testify about information known *or reasonably available to* the organization." Fed. R. Civ. P. 30(b)(6) (emphasis added). Because a corporation generally must prepare its representative to testify as to all matters reasonably available to the organization, "personal knowledge of the designated subject matter by the selected deponent is of no consequence." *Sprint Commc'ns. Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006) (footnote and citation omitted). Accordingly, "a party is not permitted to undermine the beneficial purposes of the Rule by responding that no witness is available who personally has direct knowledge concerning the areas of inquiry." *Id.* (footnote and citation omitted). Thus, it

does not matter for purposes of Rule 30(b)(6) whether Bridges has an employee with personal knowledge of any of the topics in Jackson's notice. Bridges is a defendant in this action; the testimony of its representative would not necessarily be cumulative, even if the representative has to review information provided by the other defendants.

Therefore, the Court GRANTS Bridges' Motion to Quash and/or Motion for Protective Order [Doc. No. 81] as to Topics 10, 13 through 15, 17, 18, 22, 23, 25 through 30, and 33 through 38. The Court DENIES Bridges' motion as to Topics 12, 16, 31, and 32. The remaining topics for Jackson's Rule 30(b)(6) deposition of Bridges' corporate representative are Topics 4, 5,[5] 12, 16, 31, and 32.[6]

### 3. *Kingwood's Motion to Quash and/or Motion for Protective Order*

Kingwood's motion requests that the Court quash and/or enter a protective order regarding fifty-one of the sixty topics in Jackson's notice. [Doc. No. 82]. Kingwood did not object to topics about the "pest infestation" and the facility's response, individuals not employed by the facility who might have provided care or treatment to Mr. Jackson, and information contained in Mr. Jackson's medical chart. [*Id.* at 1; Doc. No. 75 ¶¶ 2–3, 31, 54–59]. Kingwood argues that every other topic in the notice is improper because, among

---

[5] Topics 4 and 5 in Jackson's notice to Bridges are the same as Topics 5 and 6 in Jackson's notice to Amity. *Compare* [Doc. No. 74 ¶¶ 4–5], *with* [Doc. No. 73 ¶¶ 5–6].

[6] All other topics are withdrawn. *See* [Doc. No. 85-2]. The Court views Topic 6 in Jackson's notice to Bridges to be withdrawn by Jackson, as was the same Topic 4 in Jackson's notice to Amity. Topic 11 is also withdrawn. *See* [Doc. No. 81 at 1–2]; *supra* n.3. In sum, Topics 1–3, 6–9, 11, 19–21, 24, and 39–40 are withdrawn by Jackson, and the Court will not consider them or Bridges' objections to them.

other defects, they are overly broad, not reasonably particular, irrelevant, or disproportionate to the needs of the case. [Doc. No. 82 at 6–15].

    *a.*  <u>*Topics 1, 4 through 9, 11, 17, 20, 26, 35, 43, 44, 50, and 60.*</u>

Jackson's response to Kingwood's objections to each of these topics states: "Plaintiff is withdrawing this topic, thus making the issue moot." [Doc. No. 85-1 at 7, 8, 11–16]. Accordingly, these topics are withdrawn, and the Court will not consider them or Kingwood's objections to them.

    *b.*  <u>*Topics 10, 12, 18, 21, 24, 28, 32, 37, 46, 48, and 49.*</u>

Each of these topics asks Kingwood to identify certain individuals. Topic 10 requests "[t]he identity of each director of operations and/or Regional Director assigned to the Facility during the Requested Time Period and those person's job responsibilities during that period." [Doc. No. 75 ¶ 10]. Many of the remaining topics request the identities of those involved in crafting various policies and practices in effect while Mr. Jackson was a resident at the nursing facility. These policies and practices relate to the following: "resident care (clinical)" [*id.* ¶ 12], "the staffing budget of RNs; LPNs; CNAs; and CMTs" [*id.* ¶ 18], "the nursing HPPD" [*id.* ¶ 21], receiving and reviewing "employee complaints about staffing or lack of (caregiver) staffing" [*id.* ¶ 24], the approval or denial of requests to place "order[s] for supplies or other tangible resources" [*id.* ¶ 28], and approval of the facility's budget [*id.* ¶ 46]. In addition, Jackson requests that Kingwood identify "each quality assurance support nurse assigned to Facility" [*id.* ¶ 32], "the person responsible for supervising the Administrator" of the facility [*id.* ¶ 37], "[t]he person or

entity that pays if the Facility operates at a loss" [*id.* ¶ 48], and "the Governing Body" of the facility [*id.* ¶ 49].

Kingwood raises particularized objections to several of these topics, as well as the same overarching objection Amity raises about corporate representative depositions being too burdensome and expensive of a discovery method merely "to provide names and numbers." [Doc. No. 82 at 9]. Jackson raises the same response to Kingwood's objection as she raises to Amity's: parties have the freedom to obtain information by employing whatever method of discovery they see fit. [Doc. No. 85-1 at 5–7].

For the same reasons described above with regard to Amity's objection, the Court agrees that, given the circumstances of this case, a corporate representative deposition is an overly burdensome and expensive means to obtain information as straightforward as a person's identity. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Thus, under the federal rules, the Court "*must* limit the frequency or extent" of such discovery. *Id.* (emphasis added). Regardless of whether the information sought is relevant to the action, the means by which Jackson obtains this information must be proportional to the needs of the case. A deposition under Rule 30(b)(6) is a disproportionately burdensome discovery method for the particular information Jackson seeks. Therefore, the Court grants Kingwood's motion as to these requests.

    c. *Topic 13: In effect during the Requested Time Period, please describe and identify any method by which an Administrator, Director of Nursing, Assistant Director of Nursing or MDS Coordinator is recruited, interviewed, vetted (background check performed) or hired/employed by Facility. This should include identification of those individuals involved in any process to recruit, interview, perform background checks or hire any such individuals.*

Kingwood argues that this topic is "not reasonably particular, relevant to the issues in this lawsuit, or proportionate to the needs of the case" because "Plaintiff has not asserted any independent negligence claims against the Defendants for negligent hiring or retention." [Doc. No. 82 at 11–12]. In response, Jackson asserts that this topic "is relevant because the Complaint alleges Bridges ESOP and/or Amity Care 'directed, operated and managed the day-to-day functions of their nursing facilities—including the Facility.'" [Doc. No. 85-1 at 9] (quoting Am. Compl. ¶ 89). "Controlling the recruiting, interviews, and vetting of the Administrator, Director of Nursing, Assistant Director of Nursing or MDS Coordinator by Bridges ESOP and/or Amity Care is further evidence of the control those entities exercised over the Facility, and therefore is relevant to claims contained in the Complaint." [*Id.*].

As discussed above regarding Topic 31 of Jackson's notice to Amity, the issues of negligent hiring and retention are relevant to Jackson's negligence claim even though she has not brought separate claims for negligent hiring or retention. However, while these issues are generally relevant to this suit, they are not relevant as to Kingwood. The amended complaint alleges that Bridges and Amity are responsible for hiring and firing administrators, Am. Compl. ¶¶ 36, 43, and that these two defendants—not Kingwood— negligently failed to hire capable staff, *id.* ¶ 121. Jackson seemingly bolsters this theory of the case in her response to this objection, which focuses entirely on Bridges and Amity, not Kingwood. [Doc. No. 85-1 at 9]. Thus, this topic is not relevant as to Kingwood, and deposing Kingwood's corporate representative on this issue would be

32

overly burdensome and disproportionate to the needs of this case. Kingwood's motion is granted as to this request.

    d.   *Topic 14: In effect during the Requested Time Period, please describe and identify any method by which a health care provider, e.g. aide, nurse, is recruited, interviewed, vetted (background check performed) or hired/employed by Facility. This should include identification of those individuals involved in any process to recruit, interview, perform background checks or hire any such individuals.*

Kingwood objects to this topic on the same grounds as its objection to Topic 13: it is "not reasonably particular, relevant to the issues in this lawsuit, or proportionate to the needs of the case" because "Plaintiff has not asserted any independent negligence claims against the Defendants for negligent hiring or retention." [Doc. No. 82 at 11–12]. Jackson's response is also the same as her response regarding Topic 13: the topic is relevant because she has alleged that Bridges and Amity "directed, operated and managed the day-to-day functions of their nursing facilities," and controlling the recruitment and hiring of these healthcare providers shows Bridges and Amity's control over the facility. [Doc. No. 85-1 at 10] (quoting Am. Compl. ¶ 89).

Again, while negligent hiring may be relevant to this action, this topic is not relevant as to Kingwood because the complaint only alleges that Bridges and Amity negligently failed to hire capable staff. Am. Compl. ¶ 121. The Court grants Kingwood's motion as to this request.

    e.   *Topic 15: In effect during the Requested Time Period, please describe and identify the process by which in-service training is provided to or conducted for health care providers in Facility. This should include identification of those individuals, by name, job title and employer, involved in providing such in-service training or education, how subject matter or topics are determined for*

> *such training and a description of how training materials are commonly
> prepared, and what records are maintained regarding in-service training.*

Kingwood asserts that this topic "contain[s] no limitations on [its] scope to make [it] relevant and reasonably particular to some issue in this case." [Doc. No. 82 at 12]. "Moreover, there is no evidence that any alleged lack of training had any bearing on Mr. Jackson's care." [*Id.*]. Jackson responds that this topic is relevant because the complaint alleges that "at no point while Resident was a resident at the Facility did any of the Facility management . . . or any other staff member ever provide any sort of in-service training or clinical education." [Doc. No. 85-1 at 10] (quoting Am. Compl. ¶ 63). "Controlling the training of healthcare providers employed by the Facility by Bridges ESOP and/or Amity Care is further evidence of the control those entities exercised over the Facility, and therefore is relevant to claims contained in the Complaint." *Id.*

The relevance of this topic is apparent on its face. As Jackson notes, the amended complaint alleges that the lack of training for the nursing facility's staff constituted negligence that contributed to Mr. Jackson's injuries. This notice is reasonably particular enough to allow Kingwood to designate and prepare a corporate representative to address it, and doing so would not be unduly burdensome. The topic is appropriately limited in scope to the time during which Mr. Jackson was a resident. As with Amity's Topic 32, while this topic does request the identification of certain individuals, that is not the only information Jackson seeks here. Rather, the topic goes beyond mere identification and requests descriptions of particular aspects of the training process. Accordingly, Kingwood's motion is denied as to this request.

 f. *Topic 16: In effect during the Requested Time Period, please describe and identify how training for direct-care positions in in Facility is evaluated, e.g., how is the proficiency of care givers assessed, monitored, recorded or measured. This should include identification of those individuals, by name, job title and employer, involved in assessing proficiency or measuring skills, etc., and identification of what documents are maintained reflecting the proficiency of direct-care providers.*

Kingwood raises the same objection to this topic as to Topic 15: it is not limited in scope, relevant to the case, or drafted with reasonable particularity, and "there is no evidence that any alleged lack of training had any bearing on Mr. Jackson's care." [Doc. No. 82 at 12]. Jackson again points to allegations in the complaint regarding the lack of training for the facility's staff and asserts that this topic is relevant because "[c]ontrolling the training and proficiency of healthcare providers employed by the Facility by Bridges ESOP and/or Amity Care is further evidence of the control those entities exercised over the Facility, and therefore is relevant to claims contained in the Complaint." [Doc. No. 85-1 at 11].

This topic is relevant on its face, as the complaint alleges that the facility did not properly train its staff to assess, prevent, monitor, and report a rodent infestation; evaluation of the facility's training is relevant to these allegations. This topic is sufficiently particular and limited in scope as to provide Kingwood proper notice for preparing its representative. Therefore, the Court denies Kingwood's motion as to this request.

 g. *Topics 19, 22, 23, 40 through 42, 45, 51, and 53.*

These topics all relate to the staffing and financing of the nursing facility, addressing issues such as the nursing budget [Doc. No. 75 ¶¶ 19, 42], the nursing HPPD

[*id.* ¶ 22], employee complaints about staffing [*id.* ¶¶ 23, 51], the facility's budget [*id.* ¶ 40], nursing staffing—both facility-wide [*id.* ¶ 41] and on Mr. Jackson's wing [*id.* ¶ 45]—and staffing reports [*id.* ¶ 53]. Kingwood raises a single argument in its objection to all these topics: "For all of the reasons set forth above, the Court should not allow broad discovery regarding staffing issues at this late stage in litigation and in the absence of any evidence that understaffing caused Mr. Jackson's alleged injuries." [Doc. No. 82 at 12]. Jackson did not respond to this objection.

These topics are all facially relevant, as they plainly relate to Jackson's allegations that the nursing facility was under-staffed and undercapitalized. Kingwood has not shown that these topics are so burdensome or disproportionate to the needs of the case that addressing them would burden Kingwood more than it would benefit Jackson. These topics are all limited in scope to the period of time in which Mr. Jackson was a resident, and they are drafted with enough specificity to put Kingwood on notice as to what it needs to prepare its representative to address.

With that said, Topics 42 and 51 are duplicative of Topics 19 and 23, respectively. *Compare* [Doc. No. 75 ¶ 19] ("In effect during the Requested Time Period, please describe the process used to determine or set/establish the nursing budget (RNs; LPNs; CNAs; and CMTs) for Facility."), *and* [*id.* ¶ 23] ("In effect during the Requested Time Period, please describe the process used to receive, review, record, monitor, or report, etc., employee complaints about staffing or lack of (caregiver) staffing at Facility."), *with* [*id.* ¶ 42] ("The content and process of developing the nursing staff budgets for Defendant during the Requested Time Period."), *and* [*id.* ¶ 51] ("During the Requested

36

Time Period, identification and description of the process of receiving, reviewing, charting, monitoring, forwarding, etc., employee complaints about staffing or lack of staffing at or on behalf of The Facility."). These requests are needlessly cumulative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Topics 19 and 23 are drafted with more particularity than Topics 42 and 51. Topics 19 and 42 both address the nursing budget, but Topic 19 specifies the particular nursing positions (namely, RNs, LPNs, CNAs, and CMTs) that Jackson seeks information about. Similarly, while Topics 23 and 51 both address employee complaints about staffing, only Topic 23 specifies that Jackson is inquiring about caregiver staffing.

Therefore, the Court grants Kingwood's motion as to Topics 42 and 51 and denies its motion as to Topics 19, 22, 23, 40, 41, 45, and 53.

h. <u>*Topic 25: In effect during the Requested Time Period, please described the corporate, organizational, financial or other relationship, if any, between Facility and the Co-Defendant.*</u>

Kingwood argues that this topic "is extremely broad and is not reasonably particular." [Doc. No. 82 at 12]. "However," the motion continues, "Kingwood represents it is the operator of the facility and Amity provides management services. Bridges is a parent company to Kingwood and Amity. To the extent Plaintiff can demonstrate the relevance of any additional information, she should be required to draft a reasonably particular topic." [*Id.* at 12–13]. Jackson did not respond to this objection.

Considering Jackson's allegations that Amity, Bridges, and Kingwood were engaged in a joint venture and therefore "owed a joint duty to Resident to use reasonable care for [his] safety while under their care and supervision," Am. Compl. ¶¶ 48–50, this

topic appears relevant on its face. But given the information provided in Kingwood's motion, it is not clear what additional information Jackson would seek on this topic. For this reason, the Court grants Kingwood's motion as to this request.

    i. _Topic 27: In effect during the Requested Time Period, please describe the process by which medical supplies of any kind are ordered, requested, purchased, or otherwise acquired by Facility. This should include identification of the process by which any need for such supplies is determined or noted; the individuals involved in determining such need or requesting such supplies._

Kingwood argues that this topic is not relevant because "this lawsuit does not involve any allegations regarding supplies." [Doc. No. 82 at 13]. Jackson did not respond to this objection.

The relevance of this topic is not apparent on its face. As Kingwood notes, the amended complaint makes no allegation that a lack of necessary medical supplies constituted negligence and contributed to Mr. Jackson's injuries. The amended complaint alleges that Kingwood and Amity "had no autonomy to decide their own financial course," including the authority to determine "what resources were available to the staff to prevent rodent infestation and attacks on residents." Am. Compl. ¶ 86. Given the context of this sentence, however, and the fact that the allegation appears in a section captioned "Undercapitalization/Underfunding at the Facility," it appears that the "resources" Jackson refers to are financial resources, not medical supplies. Jackson has made no showing of this topic's relevance, so the Court grants Kingwood's motion as to this topic.

    j. _Topic 29: In effect during the Requested Time Period, please describe how payments, refunds, invoices, or other financial transactions are received from CMS/Medicare/Medicaid to Facility. This should include identification of any_

*individual or entity/organization, not employed by the Facility, that handles, receives, or records these transactions. Further, please identify the nature of the accounts these transactions are made to or from, including the account holders.*

According to Kingwood, "[t]his lawsuit does not involve any allegations regarding Mr. Jackson's bills," so "Plaintiff has no legitimate reason to request testimony on [this] topic[]." [Doc. No. 82 at 13]. Jackson did not respond.

The Court agrees with Kingwood: the relevance of this topic is not apparent from its face. It is not clear how the handling of these financial transactions relates to any allegations in the complaint. Jackson has not met her burden of showing the relevance of this topic, so the Court grants Kingwood's motion as to this request.

k. *Topic 30: With regard to the management fee paid by Facility to any other defendant, please describe the gross amount of such management and/or consulting fees in effect during the Requested Time Period and describe the basis upon which such management and/or consulting fee is calculated. Further, please identify any documents reflecting such amounts and state whether or not those documents are in the possession of this Defendant.*

Kingwood argues that "[t]his request is not reasonably particular and information regarding management fees has no relevance to the issues in this case." [*Id.* at 13]. "However," Kingwood's motion continues, "the Defendants have previously provided Plaintiff with the management agreement between Kingwood and Amity, which provides all the information Plaintiff arguably needs." [*Id.*]. Jackson did not respond.

The Court agrees that this topic does not appear relevant to the issues raised in this action. Particularly given that Defendants have already produced the management agreement, it is not clear what additional relevant information this deposition topic might produce. The Court grants Kingwood's motion as to this request.

l.  *Topic 33: The location of the bank account where the Facility's Medicare and Medicaid Receivables are deposited; and who is a signatory on that account during the Requested Time Period.*

Kingwood's objection to this topic is the same as its objection to Topic 29: "This lawsuit does not involve any allegations regarding Mr. Jackson's bills," so "Plaintiff has no legitimate reason to request testimony on [this] topic[]." [*Id.*]. Jackson did not respond. The Court agrees with Kingwood that this information regarding its bank accounts does not appear relevant to this lawsuit. Since Jackson has not demonstrated the relevance of this topic, the Court grants Kingwood's motion as to this request.

m.  *Topic 34: The identity and capability of each computer program (including desktop or laptop computer) accessible by the Administrator during the Requested Time Period related to the operation of the Facility.*

Kingwood objects that "Plaintiff has no legitimate reason to seek testimony on this extremely broad, vague, and irrelevant topic." [*Id.* at 14]. Jackson did not respond. The Court agrees that this request is not relevant on its face, it is overly burdensome, and it is not drafted with reasonable particularity. Kingwood's motion is granted as to this request.

n.  *Topic 36: The corporate structure of This Defendant during the Requested Time Period.*

Kingwood argues that "[t]his topic is vague, irrelevant, and not reasonably particular." [*Id.*]. "However," Kingwood states, "as demonstrated by Plaintiff's lawsuit, Kingswood [sic] is a d/b/a for Defendant Terrace Gardens Nursing Center, LLC, a limited liability company." [*Id.*]. Jackson did not respond to this argument.

This topic may be relevant to this action, but it is not drafted with sufficient particularity to put Kingwood on notice as to what aspects of its corporate structure

Jackson will inquire about. Especially considering the additional information Kingwood provided in its motion, the Court grants its motion as to this request.

      o. _Topic 38: Did defendant have to comply with 42 CFR § 483.20; 42 CFR § 483.21(a-b); 42 CFR § 483.25(d); § 483.35(a-d); 42 CFR § 483.70(b, d, q) during the Requested Time Period._

Kingwood objects to this topic because it "seeks testimony regarding legal issues, [which] is not proper for corporate representative depositions testimony." [*Id.*]. Jackson did not respond. The Court agrees that this topic seeks a legal opinion, which would be overly burdensome and beyond the proper scope of this particular corporate representative deposition. *See Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 108 (D. Nev. 2023), *aff'd sub nom. Alvarado-Herrera v. Acuity A Mut. Ins. Co.*, No. 2:22-cv-00438-CDS-NJK, 2023 WL 5035323 (D. Nev. Aug. 4, 2023) (explaining that "[d]etermining whether a Rule 30(b)(6) notice is impermissibly excessive" requires consideration of a number of circumstances particular to each case, including "the nature of the subject matter addressed in the topics (*e.g.*, whether preparation may require expert or attorney input)"). The Court grants Kingwood's motion as to this request.

      p. _Topic 39: How did the Facility monitor and utilize the Nursing Home Compare Five Star Rating during the Requested Time Period._

Kingwood asserts that "[t]his topic has nothing to do with Plaintiff's claims in this lawsuit." [Doc. No. 82 at 14]. Jackson did not respond. There is no mention in the amended complaint of the "Nursing Home Compare Five Star Rating," and its relevance is not apparent from the face of the topic. Kingwood's motion is granted as to this request.

q.  _Topic 47: How the Facility receives or obtains financing during the Requested Time Period._

Kingwood objects that "this topic has nothing to do with the issues in this lawsuit" and it "requests testimony regarding Kingswood's [sic] private financial matters." [Doc. No. 82 at 14–15]. According to Kingwood, "[t]here is no valid reason to make Kingwood disclose this information in this lawsuit." [_Id._ at 15]. Jackson did not respond.

Contrary to Kingwood's assertion, the relevance of this topic is apparent on its face. The amended complaint alleges that Bridges controls the finances of the nursing facility, giving Amity and Kingwood "no autonomy to decide their own financial course." Am. Compl. ¶ 86. Bridges' financial management of the facility allegedly "left the Facility with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their facility during Resident's time there." _Id._ ¶ 88. Given these allegations, the facility's financing is relevant to this action. Kingwood asserts that this topic would require disclosure of its private financial matters, but it has not made an adequate showing that this topic is overly burdensome or disproportionate to the needs of the case. This information is relevant to Jackson's undercapitalization allegations, and Kingwood has not shown that the burdens it would face in providing this information outweigh the benefits this information would bring to Jackson. The Court denies Kingwood's motion as to this request.

r.  _Topic 52: During the Requested Time Period, describe in detail the types of reports, records, and surveys that are prepared and maintained by The Facility which are forwarded to and/or from any other Defendant._

As with Amity's objection to Topic 26 [Doc. No. 80 at 13], Kingwood argues that "[t]his topic is extremely vague and overly broad, and arguably encompasses virtually every document sent between Kingwood, Amity, and Bridges." [Doc. No. 82 at 15]. "Plaintiff makes no effort to limit the scope of this topic to any relevant topic or to discovery that is proportionate to the needs of this lawsuit." [*Id.*]. Jackson did not respond. The Court agrees that, like Topic 26 in Jackson's notice to Amity, this topic is overly broad. There is no meaningful limit on the scope of the information sought that would make this topic proportional to the needs of this case. Kingwood's motion is therefore granted as to this request.

\* \* \*

To summarize, the Court GRANTS Kingwood's Motion to Quash and/or Motion for Protective Order [Doc. No. 82] as to Topics 10, 12 through 14, 18, 21, 24, 25, 27 through 30, 32 through 34, 36 through 39, 42, 46, 48, 49, 51, and 52. The Court DENIES Kingwood's motion as to Topics 15, 16, 19, 22, 23, 40, 41, 45, 47, and 53. Together with those topics to which Kingwood did not object and those that Jackson withdrew, the remaining topics for Jackson's Rule 30(b)(6) deposition of Kingwood's corporate representative are Topics 2, 3, 15, 16, 19, 22, 23, 31, 40, 41, 45, 47, and 53 through 59.

### D. Defendants' Motion to Strike Amended Expert Report

Lastly, the Court considers Defendants' Motion to Strike Plaintiff's Amended Expert Witness Report and Disclosure and Alternative Motion to Extend Deadline for Daubert Motions. [Doc. No. 84]. In May 2024, Jackson timely filed an Amended Disclosure of Expert Witnesses under Federal Rule of Civil Procedure 26(a)(2) [Doc. No.

43

60] and attached the ten-page expert report of Barbara Barnette [Doc. No. 60-2]. Jackson

then deposed Dawnn Wright, Kingwood's Director of Nursing during Mr. Jackson's

residency, on June 20, 2024. [Doc. No. 84 at 4]. Defendants were scheduled to depose

Ms. Barnette on August 22, 2024, in Ohio. [*Id.* at 5]. Two days prior to the scheduled

deposition, Jackson filed an Amended Disclosure of Expert Witness Barbara Barnette

[Doc. No. 83] and Barnette's amended report [Doc. No. 83-1]. According to Defendants'

motion to strike, defense counsel cancelled the deposition because the amended report

was "significantly different" and fourteen pages longer than the original expert report, so

"[s]he concluded she could not analyze the report, compile and review additional

documents not referenced in the original report, and rewrite her deposition outline prior

to catching her flight the following day." [Doc. No. 84 at 6]. Nor did defense counsel

"have adequate time to discuss the amended report with her client or experts." [*Id.*].

Defendants' motion to strike followed. The motion seeks to strike the amended

expert disclosure and the amended report because Jackson filed them after the deadline to

do so had passed, and she "made no attempt to establish good cause for the belated

report." [*Id.* at 9]. According to Defendants, this late filing violated Federal Rule of Civil

Procedure 16, and they request attorneys' fees incurred while preparing for Ms.

Barnette's deposition and filing the motion to strike. [*Id.* at 9, 11]. In response, Jackson

argues that Rule 16 "has nothing to do with the facts presented here." [Doc. No. 91 at 6].

Rather, according to Jackson, she was complying with her duty to supplement an expert

report under Rule 26(e)(2), as "any new opinions contained in Ms. Barnette's

supplemental report [are] based *solely* on the testimony contained [in the] deposition of

Dawnn Wright." [*Id.* at 6, 8–9]. Defendants' reply argues that the amended report was not proper under Rule 26(e)(2) because "Ms. Barnette's new report contains material alterations based upon information available when she made her original report." [Doc. No. 92 at 4].

Under Federal Rule of Civil Procedure 16(b)(4), once the Court has entered a scheduling order, that schedule "may be modified only for good cause and with the judge's consent." "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). Additionally, if a deadline set by a scheduling order has already expired, a party must show both "good cause" and "excusable neglect" to justify a late filing. Fed. R. Civ. P. 6(b)(1)(B). "A finding of excusable neglect depends on four factors: '[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (alterations in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. It requires, in relevant part, that a party "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Under Rule 26(a)(2)(B), if a

witness is "retained or specially employed to provide expert testimony in the case," disclosure of the expert's identity must be accompanied by a written report, which is intended "to set forth the substance of the direct examination." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment). "Such disclosure is necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Id.* (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment).

A party has a continuing obligation to supplement her expert report if she "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). Importantly, though, Rule 26(e) "is 'not intended to provide an extension of the expert designation and report production deadlines' and may not be used for this purpose." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (quoting *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)). Rather, proper supplementation under the rule involves "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Id.* (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) and citing *Beller v. United States*, 221 F.R.D. 689, 694–95 (D.N.M. 2003)). Indeed,

> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

*Id.* (alteration in original) (quoting *Beller*, 221 F.R.D. at 695) (internal citations omitted).

Here, Barnette's amendment extended the length of her report from ten pages to twenty-four. Barnette listed nine categories of materials that she considered in preparing her first report. [Doc. No. 60-2 at 1]. For her amended report, she listed twenty-four categories of materials. [Doc. No. 83-1 at 1–2].[7] Of these fifteen new categories, twelve were available to Barnette when she drafted her original report. *See* [Doc. No. 84 at 7 & n.4]. These previously available sources include the depositions of Londell and Joy Jackson, which were taken in November 2023. *See* [Doc. No. 83-1 at 2; Doc. No. 84 at 3]. The amended report describes the timeline of Mr. Jackson's residency in significantly more detail than the original report, incorporating various notes from Mr. Jackson's medical charts that were not mentioned in the original report. *See* [Doc. No. 83-1 at 4–9]. Barnette's original report offered four opinions [Doc. No. 60-2 at 6–7]; her amended report offers seven [Doc. No. 83-1 at 10–15].

It is true, as Jackson asserts, that several of the new opinions in the amended report are substantively the same as the opinions in the original report. For example,

---

[7] Barnette lists the amended complaint twice. *Cf.* [Doc. No. 84 at 7] (arguing she considered twenty-five categories of documents).

Supplemental Opinion 3 is very similar to Original Opinion 1, and Supplemental Opinion

4 is nearly identical to Original Opinion 2. *Compare* [Doc. No. 60-2 at 6], *with* [Doc. No.

83-1 at 13].

However, Jackson's assertion that all new opinions in the supplemental report are

"based *solely* on the testimony contained [in the] deposition of Dawnn Wright" is

inaccurate. [Doc. No. 91 at 9]. The amended report goes far beyond filling interstices or

correcting inaccuracies. Rather, the report is an obvious attempt to strengthen or deepen

the opinions in the original report, often by incorporating information available to Ms.

Barnette when she produced the original report.

For instance, Jackson asserts that "Supplemental Opinion 1 is Original Opinion 3."

[*Id.* at 11]. According to Jackson, the only difference between the two is that the

supplemental opinion "incorporates the testimony of Dawnn Wright and that of Joy

Jackson," whose "testimony had not been corroborated" prior to Dawnn Wright's

testimony. [*Id.* at 11 & n.8]. "Critically," Jackson emphasizes, "there *are no substantive*

*changes* in the opinion." [*Id.* at 11]. Contrary to Jackson's assertion, adding Londell

Jackson's and Joy Jackson's testimony to the report *is* a substantive change. While the

ultimate conclusion of Supplemental Opinion 1 may match that of Original Opinion 3—

*i.e.*, that Defendants failed to protect Mr. Jackson from rodent bites—including this

additional testimony is a material change to the report. The Jacksons' testimonies were

available to Ms. Barnette well in advance of May 2024, when she produced the original

report. Jackson's explanation for not including her testimony earlier—that it "had not

been corroborated and could be subject to attack as self-serving story telling" [*id.* at 11

n.8]—is no excuse for failing to produce "a *complete* statement of all opinions the witness will express and the basis and reasons for them" based on all available information. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added).

The same is true for Supplemental Opinion 2. Jackson states that this opinion "is based entirely on Dawnn Wright's testimony related to the lack of an investigation into the rodent based complaints of Londell and Joy Jackson." [Doc. No. 91 at 13] (emphasis omitted). But again, this statement is not accurate. Supplemental Opinion 2 does describe Ms. Wright's testimony. *See* [Doc. No. 83-1 at 12]. However, it goes on to provide a bulleted list of "very clear" facts taken from sources beyond Ms. Wright's testimony, including Mr. Jackson's medical records, Ms. Jackson's deposition testimony, and a Department of Health and Human Services report. *See* [*id.* at 13]. Again, all of these materials were available at the time Ms. Barnette produced her original report.

Similarly, Jackson justifies Supplemental Opinion 6 by arguing it is simply the second half of Original Opinion 4, and she asserts that Supplemental Opinion 7 is based entirely on Ms. Wright's testimony. [Doc. No. 91 at 15–17]. In reality, both supplemental opinions incorporate information from records that were previously available yet not mentioned in the original expert report. *See* [Doc. No. 83-1 at 14–15]. Neither supplemental opinion so much as mentions Ms. Wright's testimony.

Lastly, the amended report includes ten state regulations that Ms. Barnette did not mention in her original report. *See* [*id.* at 18–22]. Jackson argues that this addition "was a direct result of Dawnn Wright's testimony that nursing staff *were required* to follow all Oklahoma state regulations applicable to the nursing home." [Doc. No. 91 at 17]

(emphasis in original). "Prior to Dawnn Wright's deposition," Jackson states, "Ms. Barnette lacked any admission from defendants that they were bound by the state regulation as opposed to them serving as some sort of 'guideline.'" [*Id.*]. Defendants reply that "[a] defendant does not have to expressly admit it is bound by a law for an expert to opine the defendant violated that law." [Doc. No. 92 at 8].

The Court agrees with Defendants. It strains credulity to argue that a nursing expert would not be aware that a nursing home is subject to state law unless an employee of the nursing home says so. These state regulations were available to Ms. Barnette when she drafted her first report. The late inclusion of these regulations is not a valid supplementation under Rule 26(e).

As previously stated, Rule 26(e) is not to be used as an extension of the deadline for filing expert designations and reports. Yet, by amending Ms. Barnette's expert report to add fourteen pages of information—almost all of which was available when Ms. Barnette produced her original report—Jackson has sought to do just that.

The amended expert report is not a proper supplement under Rule 26(e); rather, it is a new expert report filed after the deadline to file expert reports expired. *See* [Doc. No. 79]. Jackson has made no showing of good cause or excusable neglect that would justify this late filing under Rules 6(b)(1)(B) and 16(b)(4). *Cf.* [Doc. No. 91 at 6] (arguing the rule relating to the amendment of a scheduling order deadline "has nothing to do" with the late filing). Thus, Jackson failed to obey the Court's scheduling order, and sanctions are appropriate under Rule 16(f). "[T]he court may issue any just orders" to sanction a party under Rule 16(f), and the Court concludes that striking the amended expert report is

a just and proper sanction under these circumstances. Fed. R. Civ. P. 16(f)(1); *see also id.*
(explaining that "just orders" include "striking pleadings in whole or in part" as
authorized by Rule 37(b)(2)(A)(iii)); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31
(1962) (describing district courts' "'inherent power' . . . to manage their own affairs so as
to achieve the orderly and expeditious disposition of cases").

   Defendants' motion also requests that the Court "grant Defendants their attorney
fees in preparing for Ms. Barnette's August 22, 2024 deposition and filing this Motion,
along with their costs associated with the cancellation of Ms. Barnette's deposition
including hotel cancellation fees." [Doc. No. 84 at 11]. Under Rule 16(f), "if a party or its
attorney . . . fails to obey a scheduling or other pretrial order," the Court "must order the
party, its attorney, or both to pay the reasonable expenses—including attorney's fees—
incurred because of any noncompliance . . . unless the noncompliance was substantially
justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P.
16(f)(1)(C), (2); *see also Link*, 370 U.S. at 629–31 (discussing federal district courts'
inherent power, which includes the power to order sanctions). "Rule 16(f) was designed
to give the district courts 'very broad discretion' in imposing sanctions." *Comcoa, Inc. v.
NEC Tels., Inc.*, 931 F.2d 655, 666 (10th Cir. 1991) (quoting *In re Baker*, 744 F.2d 1438,
1440 (10th Cir. 1984) (en banc)). "Although mathematical exactitude is not required"
when determining an appropriate sanction, "there should be 'a sufficient nexus between

noncompliance with the rules and the amount of fees and expenses awarded as a sanction.'" *Id.* at 667 (quoting *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990)).[8]

The Tenth Circuit has affirmed the imposition of deposition costs and attorney's fees as sanctions under Rule 16(f). In *Comcoa*, the plaintiffs submitted a damage study after the deadline for doing so set by the district court's scheduling order had expired. 931 F.2d at 666. The district court reasoned that the plaintiffs' untimely filing prevented the defendants from properly deposing witnesses about the damage study, so the court granted defendants' motion for sanctions and "decided that defendants should be allowed to take specified depositions at plaintiffs' expense." *Id.* at 666–67. The Tenth Circuit held that the district court did not abuse its discretion by "impos[ing] $8,988.51 as sanctions under Rule 16(f)," to include "$3,813.51 in travel and transcription costs and $5,175 in attorney's fees" for the depositions. *Id.*; *see also Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 312 (M.D.N.C. 2002) ("In order to protect defendants against prejudice [from the plaintiff's untimely expert disclosure], the Court will require plaintiff to pay the costs and expense of the [expert's] deposition, including the expert fees, if any . . . and the attorney's fees incurred by defendants in connection with these motions [to exclude the expert reports], up to the amount of $3,000.00.").

---

[8] Jackson argues that Defendants "fail to comply with Local Rule 54.2(a) [sic] requiring that a party seeking to recover attorney fees 'shall file a motion for recovery of legal fees and support the same with a brief and affidavit.'" [Doc. No. 91 at 7 n.5]. This argument is misguided, as Local Civil Rule 54.2 relates to motions for fees brought at the conclusion of a case pursuant to Federal Rule of Civil Procedure 54. Local Civil Rule 54.2 does not apply here.

Jackson has not offered any grounds on which the Court could conclude that her failure to comply with the Court's scheduling order was substantially justified, and no other circumstances would make an award of expenses unjust. Thus, under Rule 16(f)(2), the Court must order Jackson or her counsel to pay the reasonable expenses incurred because of Jackson's noncompliance. Because this failure to comply appears to be entirely attributable to Jackson's counsel, not Plaintiff herself, the Court orders Jackson's counsel to pay Defendants' reasonable expenses. Such expenses are to include attorney's fees Defendants incurred by preparing their Motion to Strike Plaintiff's Amended Expert Witness Report and Disclosure [Doc. No. 84] and reply [Doc. No. 92]. Jackson's counsel must also pay any fees and costs associated with the cancellation of Ms. Barnette's original deposition, including travel and transcription costs. A sufficient nexus exists between the noncompliance of Jackson's counsel and these costs and fees because, had her counsel not filed the untimely amended expert report and disclosure, there would be no need to reschedule Ms. Barnette's deposition or for Defendants to file their motion to strike.

However, the Court will not "grant Defendants their attorney fees in preparing for Ms. Barnette's August 22, 2024 deposition." [Doc. No. 84 at 11]. There is no nexus between the noncompliance and the attorney's fees in preparing for the August 22, 2024, deposition because Defendants would have needed to prepare for the originally scheduled deposition even if Jackson's counsel had not filed an amended expert report and disclosure.

Therefore, the Court GRANTS Defendants' Motion to Strike Plaintiff's Amended Expert Witness Report and Disclosure [Doc. No. 84] and STRIKES Plaintiff's Fed. R. Civ. P. 26(a)(2) Amended Disclosure of Expert Witness Barbara Barnette [Doc. No. 83].[9] Jackson's counsel is ORDERED to pay Defendants' attorney's fees incurred by preparing the motion to strike and reply, as well as the fees and costs associated with the deposition, as set forth above. Defendants' counsel must confer with Plaintiff's counsel to determine if an agreement can be reached on these fees and costs. If the parties are unable to reach an agreement, Defendants shall file an application for fees and costs within thirty-seven (37) days. Otherwise, by that same deadline, the parties shall file a notice that they have reached an agreement on the fees and costs.

## IV.    <u>CONCLUSION</u>

For these reasons, the Court GRANTS IN PART Jackson's Motion to Compel [Doc. No. 34] as delineated above and GRANTS Jackson's Motion for Leave to File Out of Time [Doc. No. 85]. The Court GRANTS Defendants' Motion to Strike Plaintiff's Amended Expert Witness Report and Disclosure [Doc. No. 84] and GRANTS IN PART and DENIES IN PART Defendants' Motions to Quash and/or Motions for Protective Orders [Doc. Nos. 80, 81, and 82] as delineated above. This order resolves all pending motions in this action.

---

[9] Defendants' motion also requests that, "in the event the Court allows Plaintiff to issue a new report," the Court "extend the Scheduling Order deadline for Daubert motions for three weeks past the date Ms. Barnette is deposed." [Doc. No. 84 at 1–2]. The Court strikes the amended expert report, so it does not address Defendants' requested alternative relief.

The parties have thirty (30) days to complete all ordered discovery, as well as any discovery that was pending when the Court struck the trial date and pretrial deadlines on September 3, 2024.[10] [Doc. No. 90]. The Court further ORDERS the parties to file within thirty-seven (37) days a joint status report describing (1) what remains to be completed in this case and (2) the parties' availability for the trial docket so that the Court can reset unexpired deadlines.[11]

IT IS SO ORDERED this 4th day of April 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[10] The Court considers the deposition of Barbara Barnette to be pending discovery, so the parties have thirty days to depose Ms. Barnette.

[11] The number of discovery disputes (and resulting motions) is unacceptable and indicates a lack of good faith conference. The Court reminds the parties of their obligation to confer personally "*in good faith*" to make "a *sincere* attempt to resolve differences" regarding discovery before asking the Court to intervene. LCvR37.1 (emphasis added). Absent extraordinary circumstances, the deadline for filing additional discovery motions has expired. [Doc. No. 79 ¶ 6] (setting a deadline of August 7, 2024, to file all discovery motions "absent extraordinary circumstances"). Without prejudging any future motions, the Court notes that it is unlikely to find extraordinary circumstances if a party files an untimely discovery motion regarding any issues the parties were aware of before the deadline's expiration or that could have been raised with the disputes in this order.